IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DANIEL M. BARLEY, #260262,    )
    )
    Plaintiff,    )
    )
    v.    )    CASE NO. 2:10-CV-01036-WKW
    )    [WO]
LEROY JAMISON; FORMER    )
COMMISSIONER RICHARD ALLEN;    )
COMMISSIONER KIM THOMAS[1];    )
WARDEN WILLIE THOMAS;    )
CAPT. WILLIE MOORE;    )
LT. CHARLES McKEE;    )
SGT. P. LUCAS; and SGT. K. WAVER,    )
    )
    Defendants.    )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This matter is before the court on a 42 U.S.C. § 1983 action filed by Daniel M. Barley

["Barley"], a state inmate currently housed at the Draper Correctional Facility.  Barley

alleges that on August 17, 2009 at the Elmore Correction Facility ["Elmore"] Leroy Jamison,

a correctional officer, subjected him to excessive force, committed a sexual assault against

him and refused him medical treatment in violation of the Eighth Amendment to the U.S.

---

[1]Pursuant to 25(d) of the Federal Rules of Civil Procedure (amended effective Dec. 1, 2007), the defendants substituted the present commissioner of the Alabama Department of Corrections, Kim Thomas ["K. Thomas"], as a defendant for former commissioner Richard Allen in Thomas' official capacity. *Defs.' Resp. to Show Cause - Doc. No. 130* at 1. Barley, however, also sues Allen in his individual capacity, therefore, the court preserves the claims presented against Allen in his individual capacity.

Constitution and state law.  Barley further asserts that Jamison and the other named defendants, Commissioner Richard Allen ["Allen"], Warden Willie Thomas ["W. Thomas"], Captain Willie Moore ["Moore"], Lt. Charles McKee ["McKee"], Sgt. P. Lucas ["Lucas"], and Sgt. K. Waver ["Waver"] conspired against him to cover up the incident and acquiesced in the issuance of disciplinary action against Barley to protect Jamison.  *Compl. - Doc. No. 1* at 6, 10-12.  Barley seeks declaratory and injunctive relief and money damages as well as "any further relief the Court deems just and equitable."  *Id.*

In accordance with the orders of this court, the defendants filed a special report, supplemental special report and supporting evidentiary materials addressing the claims for relief raised in the complaint.  In their reports, the defendants deny they violated Barley's constitutional rights and/or state law and further argue that they are entitled to immunity in this case.

Pursuant to the court's order entered in this case and governing case law, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment. *Order of Mar. 24, 2011 - Doc. No. 18.*  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion for summary judgment is due to be granted.

2

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-24.

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motions for summary judgment, Barley is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e).  "If the evidence [on which the nonmoving party relies] is merely colorable .

. . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact,

granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Sec. of the Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*,

6

276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Barley fails to demonstrate a requisite genuine dispute of material fact so as to preclude summary judgment on any of his claims. *Matsushita*, 475 U.S. at 587.

### III.  DISCUSSION

### A.  Summary of Material Facts

For the time relevant to this complaint, plaintiff Barley was an inmate at Elmore. Defendants Jamison, Moore, McKee, Lucas and Waver all served as correctional officers at Elmore. Defendant Willie Thomas was a warden at Elmore, defendant Allen served as Commissioner of the Alabama Department of Corrections at the time of the relevant actions, and defendant Kim Thomas is the current Commissioner of the Alabama Department of Corrections.

On August 17, 2009, at approximately 11:00 a.m., Barley was on his way to an

7

appointment with his mental health counselor and psychiatrist.  When he entered the main

entrance at the Elmore Shift Office, he submitted to a routine shakedown by Jamison.  *Pl.'s*

*Aff. of Nov. 16, 2010 - Doc. No. 13-1* at 2.  Jamison took Barley's walking cane and put it

against a metal gate installed across the hallway.  Barley put his hands against the wall and

spread his feet apart.  Jamison ordered Barley to spread his feet farther apart to which Barley

responded that his disabilities made it physically impossible for him to comply with the

order.  Barley maintains that Jamison was aware of his disabilities.  Jamison again ordered

Barley to spread his feet apart at which time Barley alleges Jamison was cursing and calling

Barley names.  Barley states,

> Jamison, then, kicked my feet apart causing my body to buckle towards the
> floor.  I was able to catch myself before I fell, but severe pain went through my
> entire body.  Pain shot from my knees, radiating through my hip lower back,
> spine, and neck.  His actions caused severe pain in my knees.  Then officer
> Jamison began to act like he was searching my waist.  As Jamison went around
> the belt area of my waist, officer Jamison began to pinch to clinch, and pull at
> my stomach.  After Jamison did this, he took his right hand and went around
> my right leg and grabbed my testicles and penis, cupping them in the palm of
> his hand.   Officer Jamison bounced my genitals several times and then
> snatched them away from my body.  This caused severe pain to my genitals,
> and severe cramping to my stomach and nausea[].  Officer Jamison caused me
> to urinate in my pants.  Officer Jamison then gave me back my walking cane
> and told me, "I'm through with you." (The metal gate was blocking the view
> of the camera that was pointed at the main entrance.)

*Id.* at 2-3 (alteration added).  Barley went on to his appointment and showed the

"redness/bruising" around his stomach to his counselor and psychiatrist, who advised Barley

to report the incident.  After his appointment, Barley asserts that he changed his soiled

clothes and laid down because he was in pain.  *Id.* at 3.  Sometime around 2:30 p.m., Barley

went to the shift office, informed defendant McKee about the alleged physical and sexual

assault and asked to be taken to the medical unit.  *Id.* at 3-4.  McKee refused to take Barley

to the medical unit but directed Barley to write a statement of facts concerning the incident.

*Id.* at 4.  Jamison arrived and called Barley a liar.  *Id.*  When defendant Moore arrived, Barley

repeated his story to Moore.  Moore questioned Barley's veracity and told Barley he would

not get medical help.  *Id.*  The call nurse, however, subsequently examined Barley and

prepared a body chart documenting her observations.  *Id.*

During the afternoon of August 17, 2009, Moore, McKee and Sgt. Susan Clemons

reviewed a videotape of the incident.[3]  *Jamison Aff. of Feb. 14, 2011 - Doc. No. 11-2* at 2.

After review of the incident as captured on the videotape, these officers determined that

Jamison conducted a proper shakedown search of Barely absent the  use of unnecessary or

excessive force, including no undue harassment.  *W. Thomas Aff. - Doc. No. 11-5* at 1 ("The

. . . video tape . . . didn't show any inappropriate actions by Officer Jamison.  Officer

Jamison performed the search of inmate Barley in a . . . professional manner.");  *Moore Aff. -

Doc. No. 11-6* at 1-2 (review of the video tap did not show "any inappropriate behavior or

---

[3]The disciplinary report indicates that the officers reviewed the videotape on August 18, 2009. *Defs.' Supp. Report, Ex. 2 - Doc. No. 147-2* at 1.  The other materials in the record, however, suggest that the review of the videotape occurred on August 17, 2009. *Jamison Aff. of Feb. 14, 2011 - Doc. No. 11-2* at 2; *Pl.'s Aff. of Mar. 27, 2011 - Doc. No. 19-1* at 3 ("On August 17, 2009 . . . McKee approached me and told me he had viewed the video . . . .").  For purposes of ruling on defendants' motion for summary judgment, the court treats the date of the review as August 17, 2009.

force being used by Officer Jamison."). Barley did not view the videotape but surmises it did not provide a good view of the shake down because there was a metal gate in the hallway between the camera and Barley. *Pl.'s Aff. of Mar. 27, 2011 - Doc. No. 19-1* at 3. The videotape was not preserved by correctional officials. Counsel for the defendants states that videotape footage is generally kept for only a few days and then recorded over, and counsel indicates that is what apparently happened in Barley's case. *Defs.' Resp. to Show Cause Order - Doc. No. 17* at 2.

Barley received medical treatment at about 5:43 p.m.,[4] and the attending nurse created a body chart documenting Barley's injuries. *Defs.' Supp. Report, Ex. 1 - Doc. No. 147-1* at 2. The nurse noted Barley's description of the shakedown, his assertion of pain and her observation that the right side of Barley's stomach had some "discoloration." *Id.* Barley did not advise the nurse that he urinated during the search. *Id.* The nurse assessed Barley with "alteration in comfort." *Id.* On August 20, 2009, Barley was again evaluated by a nurse. She observed, "[l]arge bruise noted to [lower] abdomen area. C/O pain upon palpation & C/O pain to genital areas. Refuses to let me access genitals. . . ." *Defs.' Supp. Report, Ex.*

_____

[4]The body chart prepared by the nurse is dated August 18, 2009. The defendants note this date and suggest the chart was prepared on August 18, 2009. *Defs.' Supp. Report - Doc. No. 147* at 2. Nevertheless, Barley's recitation of the events suggests he went to the nurse the same day the event occurred, August 17, 2009. *Pl.'s Aff. of Mar. 27, 2011 - Doc. No. 139-5* at 1 ("On August 17, 2009, after the assault on me by Officer Jamison, I was standing in the admin. office waiting on a body chart to be performed by Nurse Friendly."); *Pl.'s Aff. of Nov. 16, 2010, Doc. No. 13-1* at 4; *Pl.'s Complaint - Doc. No.* 1 at 7; *see also Defs.' Supp. Report, Ex. 1 - Doc. No. 147-1* at 6 (Barley's Aug. 17, 2009, written statement in which he states, "The nurse then wrote an incident report concerning the pain and bruising that I had obtained at the hands of CO Jameson's [sic] aggressive abuse."). Consequently, the court treats the date the body chart was prepared as August 17, 2009, whereas the August 18, 2009 date is treated as a scrivener's error.

*3 - Doc. No. 147-3* at 1 (alteration added).  The nurse referred Barley to a physician and provided him Ibuprofen.  *Id.* at 2.

The next day, Barley states that he saw Waver and showed him the bruising.  Barley asserts that Waver asked what happened, Barley said "Jamison," and Waver said, "Figures." *Pl.'s Aff. - Doc. 13-1* at 4-5.  According to Barley, Waver refused to take pictures of the bruising or allow Barley to receive additional medical treatment.  *Id*.  Waver disputes seeing any bruising on Barley and denies refusing Barley access to seek medical treatment.  *Waver Aff. - Doc. No. 11-8* at 1.

Jamison awakened Barley on August 18, 2009 at 10:40 p.m., demanded his identification card and asked Barley his hometown.  Barley believes Jamison took these actions in an effort to intimidate him.  *Pl.'s Aff. of Nov. 16, 2010 - Doc. No. 13-1* at 5. Jamison insists he asked for Barley's identification card only so he could properly identify Barley in the disciplinary report.  *Jamison Aff. - Doc. No. 11-2* at 3.  Jamison admits that he questioned Barley about his hometown but maintains he did so because Barley showed great hostility and animosity towards Jamison, causing him concern for his and his family's safety, and to determine whether he and Barley had engaged in a previous confrontation.  *Id*.

Jamison wrote Barley a disciplinary report for violating Rule 41, Making False Statements or Charge, for attempting to deceive Jamison's supervisors into believing Jamison used excessive force during the search.  *Defs.' Report, Ex. 1 - Doc. No. 11-3* at 1.  McKee also prepared an incident report detailing Barley's violation of Rule 41 in making a false

statement with the intent to deceive Jamison's employer or prejudice another person. *Defs.'*

*Supp. Report, Ex. 1 - Doc. No. 147-1.*

On August 28, 2009, defendant Lucas, the disciplinary hearing officer, held a hearing

on the false statements charge at which Jamison and Barley provided sworn testimony and

Barley was allowed to call three of his four requested witnesses. *Defs.' Report, Ex. 1 - Doc.*

*No. 11-3* at 1-2.  During his testimony, Barley testified that during the search, "Jamison

squeezed my stomach and Around my right hip and clutched my genitals and squeezed them.

I stumbled and almost fell because I Have had 14 surgeries." *Id*. at 2.[5]   Based on the

evidence and testimony presented at this hearing, Lucas made a finding that Barley told

officers on August 17, 2009 that Jamison used excessive force against Barley during a

shakedown, but "[u]pon investigation, it was discovered that Officer Jamison did not use

excessive force during the shakedown of Inmate Barley." *Id.* at 3.  Lucas based his finding

of fact "on the sworn testimony of Officer L. Jamison . . . . Inmate Barley did give false

testimony of an Inappropriate search in the presence of Lt. Charles McKee.  Inmate Barley

could not prove the allegations Made against Officer Jamison therefore a not guilty plea was

not justified." *Id.*  Lucas also referenced Barley's testimony at the hearing and the questions

posed to Barley:  "The camera was viewed, Officer Jamison did not use excessive force on

---

[5]This sworn testimony differs from the allegations made in Barley's complaint and affidavit filed in response to the defendants' report. *See Doc. No. 1* at 7 and *Pl.'s Aff. of Nov. 16, 2010 - Doc. No. 13-1* at 3.  Specifically, Barley's testimony at the disciplinary hearing did not reference any bouncing/snatching of his genitals nor that he urinated during the search.

you, do you wish to change your testimony? No." *Id.* at 4. Lucas recommended discipline, including three months loss of good time. *Id.* at 3. The disciplinary was approved on September 8, 2009. *Id.*

Barley asserts that "Jamison [gave] Barley a bogus disciplinary to justify what he did and to try to intimidate Barley. . . . This is a pattern of conduct for these defendants i.e. *to give the inmate a disciplinary,* if he complains about being assaulted or abused by Correctional Officers at Elmore Corr. Fac." *Pl.'s Obj. - Doc. No. 13* at 2. Barley does not specifically seek in this action to have his disciplinary ruling overturned and the record does not indicate that the disciplinary action has ever been invalidated.

Jamison denies assaulting Barley, using excessive force, cursing, lying or engaging in a conspiracy. *Jamison Aff. of Feb. 14, 2011 - Doc. No. 11-2* at 3. He insists that Barley is making untrue statements. *Id.* Officials determined that there was no need for a full-fledged or formal investigation into the alleged excessive force beyond reviewing the videotape. *Defs.' Supp. Report - Doc. No. 147* at 7; *see also W. Thomas Aff. - Doc. No. 11-5* at 1 (stating videotape showed no inappropriate actions by Jamison and that Jamison conducted the search in a professional manner). Jamison's employment record includes one adverse action in 2007 for failure to notify his supervisor in advance of Jamison's decision to use chemical spray on a noncompliant inmate. *Defs.' Resp. to Show Cause Order - Doc. No. 130-1* at 1-2; *Defs.' Resp. - Doc. No. 102-5* at 1-2. The defendants state there are no other adverse actions against Jamison in his employment file within five years of August 17,

13

2009, nor was he, as Barley suggests, disciplined for physically and sexually abusing inmates and then punished with time off and "tower duty." *Defs.' Resp. to Show Cause Order - Doc. No. 130* at 1; *see PL.'s Resp. - Doc. No. 113* at 3.

## B. Suit Against the Defendants in Their Official Capacities - Absolute Immunity

To the extent that Barley sues the defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### C. Former Commissioner Allen[6]

Barley names as a defendant Richard Allen, the former Commissioner of the Alabama Department of Corrections (ADOC). Barley does not make allegations specific to Allen, and Allen avers that he has no personal knowledge of the matters that Barley alleges in his complaint. *Allen Aff. - Doc. No. 11-9* at 1. Allen states that ADOC policy forbids excessive force and maintains he would not have tolerated the use of such force. *Id.* at 2.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions

---

[6]The defendants substituted Kim Thomas, the current commissioner, as a defendant for Allen in Thoams' official capacity. *See* Fed. R. Civ. P. 25(d); *Defs.' Resp. to Show Cause - Doc. No. 130* at 1. Barley, however, also sues Allen in his individual capacity, therefore the court addresses the claims against Allen in his individual capacity.

of their subordinates under either a theory of *respondeat superior* or vicarious liability.).
"Absent vicarious liability, each Government official, his or her title notwithstanding, is only
liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.  Thus, liability for excessive
force against Barley could attach to defendant Allen only if he "personally participate[d] in
the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions
. . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Barley, however, has presented no evidence, nor can the court countenance the
existence of any evidence, that would create a genuine issue of disputed fact with respect to
the claim of excessive force lodged against defendant Allen.  Rather, it is undisputed that
Allen did not participate in the alleged excessive force incident or the subsequent acts about
which Barley complains.

In light of the foregoing, defendant Allen can be held liable for decisions of the other
defendants only if his actions bear a causal relationship to the purported violation of Barley's
constitutional rights.  To establish the requisite causal connection and therefore avoid entry
of summary judgment in favor of defendant Allen, Barley must present sufficient evidence
which would be admissible at trial of either "a history of widespread abuse [that] put[] [the
defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so.
. . ." or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional
rights, or . . . facts [that] support an inference that [Allen] directed the [facility's staff] to act
unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing

16

so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Barley has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that Allen directed the other defendants to act unlawfully or knew that they would act/acted unlawfully and failed to stop such action.  In addition, Barley has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Allen failed to take corrective action.  Finally, the undisputed evidentiary materials submitted demonstrate that the challenged act did not occur pursuant to a policy enacted by Allen.  Thus, the requisite causal connection does not exist in this case and liability under the custom or policy standard is not warranted.  Summary judgment is therefore due to be granted in favor of defendant Allen.

### D.  Medical Claim

Barley asserts that defendants Jamison, Moore, McKee and Waver failed to provide him medical care after the alleged use of excessive force.  To prevail on a claim concerning a purported denial of adequate medical treatment, an inmate must, at a minimum, show that a defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).  Specifically, officials may not subject an inmate

to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment.").

In order to properly establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition." *Mann*, 588 F.3d at 1307 (quotation marks and citations omitted). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145

18

F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838; *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (negligence or malpractice does not state constitutional violation); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that [the] defendants' response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").

Based on the record in this case, no reasonable jury could find an Eighth Amendment violation based on these defendants' response to Barley's bruising and soreness after the incident involving Jamison. Barley was seen by a nurse hours after Jamison allegedly used excessive force against him, at which time the nurse observed some discoloration on Jamison and noted his complaints of pain. *Defs.' Supp. Report, Ex. 1 - Doc No. 147-1* at 2. Upon her evaluation of Barley, the nurse instructed him to follow up with sick call if he had any further problems. *Id*. Two days later, a nurse again examined Barley at which time she documented a bruise, provided Barley Ibuprofen for pain and referred him to a physician. *Defs.' Supp. Report, Ex. 3 - Doc. No. 147-3* at 1-2. Barley fails to show he had a serious medical need that was ignored and likewise fails to demonstrate any injury caused by a delay in receiving

treatment. *See Adams*, 61 F.3d at 1546. In light of the foregoing, defendants Jamison, Moore, McKee and Waver are due to be granted summary judgment on Barley's claim that the defendants acted with deliberate indifference in violation of the Eighth Amendment.

The grant of summary judgment on Barley's medical claim does not, however, dispose of his claim that Jamison used excessive force against him in violation of the Eighth Amendment nor his claim that defendants W. Thomas, Moore, McKee, Lucas and Waver conspired to cover up Jamison's acts. The court now turns to the excessive force claim against Jamison.

### E.  Defendant Jamison

#### 1.  Qualified Immunity

With respect to Barley's excessive force claim lodged against Jamison in his individual capacity, Jamison argues he is entitled to qualified immunity. However, "'there is no room for qualified immunity' in Eighth Amendment . . . excessive force cases because they require a subjective element that is 'so extreme' that no reasonable person could believe that his actions were lawful. *Johnson v. Breeden*, 280 F.3d 1308, 1321-22 (11th Cir. 2002)." *Danley v. Allen*, 540 F.3d 1298, 1310 (11th Cir. 2008). Thus, a qualified immunity defense is not available when a plaintiff properly pleads the use of excessive force and the only question for a federal district court is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment. *Id.* at 1302; *see also Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992); *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). Accordingly,

this court will consider whether Barley's allegation that Jamison used excessive force against him -- which the court must at this point in the proceedings take as true for purposes of summary judgment -- sets forth a violation of Barley's Eighth Amendment rights.

## 2. Excessive Force

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard for evaluating such excessive force claims is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7 (relying on *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). Factors to consider in making this determination include "the extent of injury suffered," "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* at 7 (citation omitted); *see also Whitley*, 475 U.S. 321 (listing factors); *Skrtich v. Thornton*, 280 F.3d 1295, 1300-01 (11th Cir. 2002)*.* "From such considerations inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. 321. The "absence of serious injury" provides some indication of the level of force used, and the "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional

recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10 (quoting *Whitley*, 475 U.S. at 327 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (further quotation marks omitted)). "Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam). In *Wilkins*, the Supreme Court held that an inmate stated an Eighth Amendment excessive force claim when he alleged "he was punched, kicked, kneed, choked, and body slammed 'maliciously and sadistically' and '[w]ithout any provocation,'" and he suffered "a bruised heel, back pain, and other injuries requiring medical treatment." *Id.* at 38. Recognizing that the relief in such a case could be slender, the Court added that "even if [the inmate] succeeds, the relatively modest nature of his alleged injuries will no doubt limit the damages he may recover." *Id.* at 40.

Barley avers that during a routine shakedown, Jamison subjected him to excessive force by kicking his legs apart because he could not spread them, pinching and grabbing Barley's stomach, and grabbing and yanking Barley's genitals, causing him such pain that his legs buckled and he urinated. Barley asserts that the force allegedly used by Jamison was in excess of that required during the shakedown because he posed no threat to Jamison. Barley also asserts that Jamison refused to allow him to see a nurse afterward. Barley alleges

22

that Jamison adamantly denied the incident occurred and accused Barley of lying about it. On the day of the incident, the nurse noted that Barley had discoloration on his stomach and pain, but Barley refused to let the nurse examine his genitals, and her notes do not indicate he said the pain caused him to urinate. At a follow up visit, the nurse noted a large bruise on Barley's lower abdomen and documented his complaint of pain.

Viewing the facts in the light most favorable to Barley, as is required at this stage of the proceedings, the court concludes that Barley is due no relief on his Eighth Amendment claim regarding Jamison's acts. Here, Barley's injuries were clearly minimal. He suffered a bruise and there is no medical record of any actual injury to his genitals. While the minor nature of an inmate's injuries is not dispositive of an excessive force claim, *see Wilkins*, 130 S. Ct. at 1177, a review of the whole incident demonstrates Jamison used, at most, de minimis force against Barley, and the force used was not "repugnant to the conscious of mankind," *see Whitley*, 475 U.S. at 327 (quotation marks and citation omitted). Jamison was conducting a routine pat-down search of Barley before he entered a building. Barley does not dispute that it was proper for Jamison to conduct a pat-down search of him before he entered the building. Such a search could properly involve the genital area. Jamison kicked Barley's legs apart because, as Barley admits, he was not compliant with Jamison's request to spread his legs apart so that Jamison could conduct the search. Barley does not state Jamison used excessively heavy force in kicking Barley's legs apart; rather, he focuses on his own physical ailments as the cause of his pain when Barley kicked his legs apart. Barley

23

makes a conclusory allegation that Jamison cursed and called Barley names, but he does not state what, exactly, Jamison said.  During the shakedown Barley did not complain that he was being hurt or touched inappropriately, and immediately after the alleged incident he did not complain to correctional officials about Jamison's behavior or ask for medical assistance. Instead, he continued on to his appointment with mental health personnel.  Barley also did not tell the nurse performing the first examination that the initial pain was so great it caused him to urinate.

Several courts have ruled that brief, isolated and general contact with an inmate's genitals during a pat-down search, such as the one Barley describes, does not state an Eighth Amendment violation.  *E.g.*, *Sherwood v. Schofield*, No. 2:12-CV-50, 2013 WL 3943542 at *5 (E.D. Tenn. July 30, 2013) (groping of genitals during one, routine pat-down search is insufficient to state claim) (citing similar cases);  *Young v. Brock*, 2012 WL 385494, at *4 (D. Colo. Feb. 7, 2012) (where officer allegedly fondled and squeezed inmate's genitals during pat-down search, "caselaw is clear that such a single pat-down search cannot be said to violate the Constitution") (citing similar cases); *Tuttle v. Carroll Co. Det. Ctr.*, No. 2:10–12–DCR, 2010 WL 2228347, at *2 (E.D. Ky. June 2, 2010) (inmate's privacy and dignity were not violated when officer grabbed and squeezed his testicles during single pat-down search); *cf. Cherry v. Frank*, No. 03-C-129, 2003 WL 23205817, at *12 (W.D. Wis. Dec. 4, 2003) (during strip search, "[a]ny manual search of an individual's body will require some amount of manipulation of the genitals in order to accomplish the purpose of

24

the search.    Although 'grabbing' and 'tugging' could cause some discomfort and embarrassment, it does not rise to the level of 'unnecessary and wanton infliction of plain' so long as it occurs as part of an otherwise justified search), *aff'd*, 125 F. App'x 63 (7th Cir. 2005); *but cf. Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) ("The plaintiff alleges that he complained vociferously to the defendant about the pat down and strip search while they were going on, to no avail.   We don't see how the defendant's conduct if correctly described by the plaintiff could be thought a proper incident of a pat down or search . . . ."). Based on this record, Barley cannot prevail on his claim that Jamison used excessive force against him  or that Jamison acted maliciously and sadistically in conducting the shakedown. *See Skrtich*, 280 F.3d at 1301.

In  addition,  pursuant  to  28  U.S.C.  §  1997e(e),[7]  Barley  cannot  recover  monetary damages because the force used against him was, at most, de minimis and not "of the sort 'repugnant to the conscience of mankind.'"   *See Harris v. Garner*, 190 F.3d 1279, 1287 n.7 (11th Cir. 1999) ("'We do not resolve the question whether de minimis uses of physical force might  satisfy  section  1997e(e)  if  they  are  of  the  sort  'repugnant  to  the  conscience  of mankind,' *Hudson*, 503 U.S. at 10 (citation and internal quotation marks omitted), because we find that on this record the question is not presented.   [The inmate's] forced 'dry shave'

---

[7]Pursuant to 28 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 28 U.S.C. § 1997e(e), *amended Mar. 7, 2013*, Pub. L. 113-4, Title XI, § 1101(a), 127 Stat. 134 (adding "or the commission of a sexual act" as defined in 18 U.S.C. § 2246 after "physical injury").

is not the sort of physical force 'repugnant to the conscience of mankind.'") (alteration

added), *reh'g en banc granted, opinion vacated*, 197 F.3d 1059 (11th Cir. 1999), *reinstated*

*in part on reh'g*, 216 F.3d 970 (11th Cir. 2000) (en banc). Consequently, the motion for

summary judgment with respect to the excessive force claim presented against defendant

Jamison in his individual capacity is due to be granted.[8]

### F.  Remaining Defendants

Barley does not allege the remaining defendants, W. Thomas, Moore, McKee, Lucas

and Waver directly participated in the alleged excessive force against him.  Instead, he

alleges the remaining defendants did not assist Barley afterwards and joined together to cover

up Jamison's acts.

"Conspiring to violate another person's constitutional rights violates section 1983.

*Dennis v. Sparks*, 449 U.S. 24, 27, 101 S. Ct. 183, 186 (1980); *Strength v. Hubert*, 854 F.2d

421, 425 (11th Cir. 1988), *overruled in part on other grounds by Whiting v. Traylor*, 85 F.3d

581, 584 n.4 (11th Cir.1996)." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th

---

[8]Barley's claim is also due to be dismissed based on *Heck v. Humphrey*, 512 U.S. 477 (1994).  In *Heck*, the Supreme Court determined that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 486-87.  If Barley were to succeed on his claim that Jamison used excessive force, it would necessarily imply the invalidity of his lost good time for falsely accusing Jamison of using excessive force on him and, thus, his § 1983 claim is barred unless he can show his disciplinary conviction has been overturned.  *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (extending *Heck* to claims involving an inmate's loss of good-time credits); *Davis v. Hodges*, 481 F. App'x 553 (11th Cir. 2012) (where ruling in § 1983 suit would negate findings of disciplinary judgment involving good time credit, suit is barred by *Heck*).

2002).  To proceed on a conspiracy claim under 42 U.S.C. § 1983, "a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir. 1990), *cert. denied*, 500 U.S. 932, 111 S. Ct. 2053, 114 L. Ed.2d 459 (1991). . . . [T]he linchpin for conspiracy is agreement. . . ." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied*, 506 U.S. 832 (1992).  In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, . . . [he] must [produce] some evidence of agreement between the defendants. . . ." *Rowe*, 279 F.3d at 1283-84.  Merely "stringing together" acts, without showing contacts which could prove that these parties "reached an understanding" to violate plaintiff's rights, is insufficient to demonstrate the existence of a conspiracy.  *See Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992).  "For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence . . . will not suffice; there must be enough of a showing that the jury could reasonably find for that party.' *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)."  *Rowe*, 279 F.3d at 1284.

The court has carefully reviewed Barley's claim of conspiracy and concludes that, even if the claim against Jamison survived, summary judgment would be due to the remaining defendants because no reasonable jury could find in his favor on his claim against them.  None of these defendants participated in the alleged excessive force against Barley.  They reviewed the video of the incident, and Barley admits the video that the defendants

reviewed did not provide a clear view of Jamison's acts. Barley asserts that these defendants' acts are part of a pattern but provides no other verified instances except for his own. Barley's assertions are self serving, purely conclusory allegations that fail to assert those material facts necessary to establish a conspiracy. *See Harvey*, 949 F.2d at 1133; *Fullman*, 739 F.2d at 556-557.

As for the disciplinary report, the correctional defendants assert that the information on which they relied in the disciplinary process is correct and an accurate representation of the plaintiff's disruptive conduct. Moreover, there is no evidence before the court that the defendants relied on information they *knew to be false* during any stage of the disciplinary process. *See Monroe v. Thigpen*, 932 F.2d 1437, 1442 (11th Cir. 1991) ("prisoners do not state a due process claim by merely asserting that erroneous information may have been used during their parole consideration," but reliance on *admittedly false information* to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution). Specifically, there is no admission by any of the defendants that the information utilized in levying the disciplinary against Barley is false, incorrect or erroneous. The record in this case therefore establishes that the defendants did not rely on ***admittedly*** false information.

To the extent Barley complains that the defendants failed to properly investigate his claims regarding the actions taken against him on August 17, 2009, he is likewise entitled to no relief. "Section 1983 creates no substantive rights; it merely provides a remedy for

deprivations of federal statutory and constitutional rights."  *Almand v. DeKalb Cnty., Ga.*, 103 F.3d 1510, 1512 (11th Cir. 1997) (citing *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir. 1996)); *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985) ("It is well-settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere.").   Barley's claim regarding a violation of his constitutional rights by failing to investigate his allegations does not implicate any constitutional right to which he is entitled.  Specifically, this claim does not rise to the level of a constitutional violation as inmates simply do not enjoy a constitutional right to an investigation of any kind by government officials.  *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) ("The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment.).

In light of the foregoing, summary judgment is due to be granted in favor of defendants W. Thomas, Moore, McKee, Lucas and Waver on the remaining federal claims.

### G. State Law Claims

Finally, to the extent Barley asserts a violation of state law as the basis for relief, he is entitled to no relief from this court.  The court's exercise of supplemental jurisdiction over

the state law claim is completely discretionary.  Under 28 U.S.C. § 1367(c)(3), the court

"may decline to exercise supplemental jurisdiction over a [state law claim] if . . . the district

court has dismissed [the related federal] claim[] over which it has original jurisdiction . . .

."  The court's discretion is advised by *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966),

in which the Court held that

> [n]eedless decisions of state law should be avoided both as a matter of
> comity and to promote justice between the parties, by procuring for
> them a surer-footed reading of applicable law.[]   Certainly, if the
> federal claims are dismissed before trial, even though not insubstantial
> in a jurisdictional sense, the state claims should be dismissed as well.[]

*Id.* at 726 (footnotes omitted).  In *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350

(1988), the Supreme Court reiterated that "when the federal-law claims have dropped out of

the lawsuit in its early stages and only state-law claims remain,[] the federal court should

decline the exercise of jurisdiction by dismissing the [claim] without prejudice . . . ."  *Id.*

(footnote omitted).   Accordingly, the court concludes that Barley's  claims alleging a

violation of state law should be dismissed without prejudice.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment be GRANTED in favor of the defendants with

respect to the claims for monetary damages lodged against them in their official capacities

as the defendants are entitled to absolute immunity from these claims.

2.  Summary judgment be GRANTED in favor of defendant Kim Thomas as he is

sued only in his official capacity.

3.  The motion for summary judgment be GRANTED in favor of defendants Jamison, Allen, W. Thomas, Moore, McKee, Lucas and Waver in their individual capacities.

4.  The supplemental state claims be DISMISSED without prejudice.

5.  Costs be taxed against the plaintiff.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **November 21, 2013**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions

of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 7th day of November, 2013.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE